**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

YUSUF IBRAHIM,                      :
                                   :
              Plaintiff,            :        Civ. No. 21-3633 (GC) (TJB)
                                   :
      v.                           :
                                   :
BRUCE DAVIS, et al.,               :        **OPINION**
                                   :
              Defendants.          :
_____:

**CASTNER, District Judge**

### I.      INTRODUCTION

Plaintiff, Yusuf Ibrahim ("Plaintiff" or "Ibrahim"), is a state prisoner at the New Jersey

State Prison ("NJSP") in Trenton, New Jersey.  He is proceeding *pro se* with a civil rights

Complaint filed pursuant to 42 U.S.C. § 1983.  Plaintiff has paid the filing fee.

The allegations of the Complaint must be screened pursuant to 28 U.S.C. § 1915A(b) to

determine whether they are frivolous or malicious, fail to state a claim upon which relief may be

granted, or whether the allegations seek monetary relief from a defendant who is immune from

suit.  For the following reasons, Plaintiff's Complaint shall proceed in part.

### II.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff's Complaint in this action was partially severed from another action that Plaintiff

has pending before this Court.  (*See* Civ. No. 19-5021).  In that case, the Court severed Claims 11-

28 to this new civil action.  Thus, this Court will limit its discussion for purposes of this screening

to Plaintiff's allegations related to those severed eighteen claims.  Recently, Plaintiff indicated he

seeks to withdrawal Claims 17, 18, 21, 23, 24, 25, 26 and 27.  (*See* ECF 10).  Additionally, he

stated that he no longer seeks to sue Defendants Officer Christmas, Unknown Officers #1 and #2, Officer Zetty, Officer Green, Sergeant Mariconda and Sergeant Waters. (*See id.*). The allegations of the remaining claims in the Complaint are construed as true for purposes of this Opinion.

The main crux of these eighteen claims arises from a strip search and subsequent actions (or inactions) by NJSP staff towards Plaintiff. Plaintiff lists specific factual allegations for each claim within each of his sub-headings in his Complaint. Thus, for purposes of this screening, the Court will do the same.

First, this Court will note the factual allegations contained within each claim in this Part. Subsequently, in *infra*, Part IV, this Court will analyze whether Plaintiff has sufficiently stated a claim against any of the Defendants named in that specific claim with facial plausibility to permit that claim to proceed past screening.

A. Claim 11

In Claim 11, Plaintiff alleges that he was subject to public sexual humiliation by several NJSP correctional officers during a strip search. He asserts Officer J. Patterson attempted to perform a strip search of Plaintiff in front of a homosexually aggressive inmate. (*See* ECF 1 at 12). Plaintiff states that this made him nervous, yet he performed and obeyed every order from the Officer. (*See id.* at 13). Plaintiff states that Officer Patterson was not satisfied with the search and then ordered Plaintiff to redo it if Plaintiff wanted to see his lawyer. (*See id.*). During the search, the other inmate laughed and commented on Plaintiff's nakedness. (*See id.*). Officer Patterson then told Plaintiff, "You want to see your lawyer? You like filing lawsuits? Fuckin' strip! Start over!" (*See id* at 14).

At this point, Plaintiff stated that he was not going to perform the strip search again in front of all the people viewing him. (*See id.*). Officer Patterson then closed his cell door and stated that

Plaintiff was refusing his attorney visit and strip search. (*See id.*). Plaintiff subsequently banged on his cell door whereupon Sergeant Mendoza went to speak to Officer Patterson, but not to Plaintiff. (*See id.*).

Sergeant Mariconda then entered the unit along with Doctor Schmidt. (*See id.*). Plaintiff then argued with Sergeant Mariconda about refusing the strip search. (*See id.*). The inmate who had seen Plaintiff naked then announced he "saw everything." (*See id.* at 14-15). However, Sergeant Mariconda claimed aloud that the inmate could not see Plaintiff because of a pole in front of Plaintiff's cell. (*See id.* at 15). Plaintiff pleaded with Sergeant Mariconda to be re-stripped out of sight of the inmate to no avail. (*See id.*). Doctor Schmidt then ordered Plaintiff to be placed on "constant-watch." (*See id.*). Plaintiff was then stripped naked and put in an empty cell. (*See id.*) Plaintiff was subsequently discharged from the "constant-watch" cell the next day. (*See id.*).

Plaintiff asserts that his Fourth and Eighth Amendment rights were violated based on these allegations within Claim 11. (*See id.* at 16). Plaintiff names Officer Patterson as a Defendant in this claim. (*See id.*)

B. Claim 12

Petitioner asserts a violation of his right to see his attorney in Claim 12. (*See id.* at 16). Plaintiff complains a scheduled attorney visit was denied based on the circumstances surrounding his strip search described in Claim 11. (*See id.*). He specifically names Sergeant Mendoza and as a Defendant in this action for his role in covering up for Officer Patterson.

C. Claim 13

Plaintiff raises a due process argument in Claim 13. More specifically, Plaintiff states that Officer Patterson wrote up a disciplinary charge against Plaintiff for purportedly refusing a strip search order. (*See id.* at 17-18). Plaintiff states that the charge sheet stated that he waived his right

to a conference on this charge. (*See id.* at 18). Plaintiff was then found guilty of the charge. (*See id.*). However, Plaintiff states he never waived his right to a conference on this charge. (*See id.*). He brings this claim against Sergeant Mendoza and Officer Patterson.

### D. Claim 14

In Claim 14, Plaintiff alleges a cruel and unusual punishment violation. More specifically, the denial of Plaintiff's attorney visit caused him to become hysterical. (*See id.* at 19). Doctor Schmidt then arrived and ordered Plaintiff be committed to "constant-watch," a crisis unit for suicidal inmates. (*See id.* at 20). Plaintiff states that he then banged his head on his cell door, which was the basis for sending him to "constant-watch." (*See id.*).

Plaintiff states that nurses noted no swelling, bruising or bleeding when he was then processed at the medical department. (*See id.* at 21). The crux of Plaintiff's factual allegations within this claim relate to the conditions of confinement in the "constant-watch" cell. (*See id.*). Plaintiff received greatly reduced food portions and endured freezing cold temperatures in the cell while being naked, barefoot and completely cut-off from the outside world. (*See id.*). Plaintiff brings this claim under the Eighth Amendment against Doctor Schmidt. (*See id.* at 22).

### E. Claim 15

Plaintiff sues Doctor Schmidt in Claim 15 for retaliation. More specifically, he states that Doctor Schmidt put him on "constant-watch" to retaliate against Plaintiff for filing a lawsuit complaining about inadequate treatment from Dr. DeFilippo. (*See id.* at 22).

In support of this claim, Plaintiff alleges Doctor Schmidt at one point prior asked Plaintiff to limit his complaints to once a week. (*See id.*). Upon being released from "constant-watch" after one day, Doctor Schmidt told Plaintiff her decision to place Plaintiff in "constant-watch" was not retaliatory. (*See id.* at 23).

F. Claim 16

In Claim 16, Plaintiff alleges that he suffered irreparable harm related to Officer Patterson's, and Sergeant Mendoza's actions, which prevented him from meeting with his attorney on the date of the strip search described above.

G. Claim 19

In Claim 19, Plaintiff alleges that his attempt to pursue legal action has been denied by retaliation from Officer Pazik.  More specifically, Plaintiff notes Officer Pazik at one point searched his cell purportedly related to Plaintiff's wrist brace he had received from the medical department.  (*See id.* at 26).  Officer Pazik though then read Plaintiff's legal documents and was assisted by Officer Moran.  (*See id.*).  Upon exiting the cell, Officer Pazik told Plaintiff he was not permitted to have that specific brace, but that he would be getting a new one.  (*See id.* at 27).

Subsequently, after the Officers left, Plaintiff realized a legal document was missing.  (*See id.*).  Plaintiff filed a grievance with respect to this issue the next day.  Plaintiff asserts that Officer Pazik seized this document in retaliation for complaints Plaintiff previously filed.

H. Claim 20

In Claim 20, Plaintiff raises a retaliation claim against Officer Patterson.  More specifically, Plaintiff complains that his mail disappeared.  (*See id.* at 28-30).  Plaintiff claims this has affected both outgoing and incoming personal and legal mail.  (*See id.* at 29-30).  He specifically mentions a courtesy copy of a letter he sent to Governor Phil Murphy that was purportedly not sent because it was addressed to "the Governor."  (*See id.*).  Plaintiff also alludes to numerous other mailings that he has either not received, or that his intended party has not received.  Plaintiff states that Officer Patterson is responsible in his supervisory and individual capacity as the "Mailroom Sergeant" for the disappearance of his mail.  (*See id.* at 30).

I.   Claim 22

In Claim 22, Plaintiff alleges that Officer Patterson, Sergeant Mendoza and Major Sears attempted to thwart Plaintiff's efforts to bring a complaint against Officer Patterson related to the strip search described above.  Plaintiff first states that Officer Patterson gave him a disciplinary charge to cover up for the fact that Plaintiff was sexually humiliated by the strip search.  (*See id.* at 32).  Sergeant Mariconda then announced after the strip search that there was a pole obstructing the inmate's view of the strip search, which was purportedly a lie.  (*See id.*).

Sergeant Mendoza and Major Sears subsequently arrived at Plaintiff's cell to investigate Officer Patterson's disciplinary charge against Plaintiff.  (*See id.*).  Plaintiff told Sergeant Mendoza about the sexual humiliation he felt due to the strip search Officer Patterson had ordered.  (*See id.*).  However, Plaintiff felt Sergeant Mendoza and Major Sears were "interrogating" him to convince him that the inmate could not see him.  (*See id.* at 32-33).

Plaintiff subsequently spoke to SID [Special Investigations Division] investigators Hernandez and Islam.  (*See id.* at 33).  Plaintiff was made aware by them that the form filled out by Sergeant Mendoza did not reflect Plaintiff's answers to his questions and that he had been set up by Sergeant Mendoza.  (*See id.*).

Subsequently, Plaintiff was moved to another unit, which Plaintiff construes as being retaliatory as it hinders his ability to pursue his claims as he is no longer on the same unit to get cooperation from inmate witnesses.  (*See id.* at 34).

J.   Claim 28

In Plaintiff's final claim, he alleges an incident occurring while he was using a legal computer.  (*See id.* at 40).  When Plaintiff attempted to pass some legal information to another inmate, Officer Zetty gave Plaintiff a cold stare and told floor officers to remove him from the

station. (*See id.* at 41). Plaintiff was then abruptly removed, taken to a cell and strip searched by Officers Balon and Williams under the direction of Officer Zetty even though passing notes between inmates is a common practice. (*See id.*).

Plaintiff was subsequently sent to a dry cell, stripped naked and spent four days there. (*See id.*). He was also given a drug test which came back negative. (*See id.*). Plaintiff's stool though was investigated and X-rayed. (*See id.*). Plaintiff subsequently received two disciplinary charges, one for swallowing a piece of paper and one for having pockets sewn into his undergarments. (*See id.*).

Plaintiff subsequently had his charges upgraded by Hearing Officer Falvey. (*See id.*). Plaintiff states Falvey upgraded the charges because Plaintiff is suing his subordinate Hearing Officer Cortes. (*See id.*). Plaintiff's request for an impartial hearing officer was denied and Falvey found Plaintiff guilty of the disciplinary charges.

Plaintiff seeks monetary damages as relief for his claims.

## III.   LEGAL STANDARD

"[T]he legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915A is identical to the legal standard employed in ruling on 12(b)(6) motions." *See Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)). Under *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

7

the defendant is liable for the misconduct alleged." *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 483 n.17 (3d Cir. 2012) (quoting *Iqbal,* 556 U.S. at 678).

Plaintiff brings his claims pursuant to 42 U.S.C. § 1983. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

Thus, to state a claim for relief under § 1983, a plaintiff must allege first, the violation of a right secured by the Constitution or laws of the United States, and second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (citations omitted); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

## IV.    DISCUSSION

### A.  Claim 11

In Claim 11, Plaintiff sues Officer Patterson for conducting the humiliating strip search.

A prisoner's challenge to a strip search may be cognizable under § 1983 through the Fourth Amendment as well as the Eighth Amendment. *See Jordan v. Cicchi*, 428 F. App'x 195, 199-200 (3d Cir. 2011). The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. amend. IV. Convicted prisoners retain some Fourth Amendment rights upon commitment to a corrections facility;

however, they only have limited rights under the Fourth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 558 (1979); *Russell v. City of Phila.*, 428 F. App'x 174, 177 (3d Cir. 2011) (prisoner could state a Fourth Amendment claim based on a strip and cavity search). To raise a Fourth Amendment claim, the prisoner must allege that the strip search was unreasonable. *See Fatir v. Phelps*, No. 18-933, 2019 WL 2162720, at *5 (D. Del. May 17, 2019); *Robinson v. Ricci*, No. 08-2023, 2012 WL 1067909, *16-17 (D.N.J. Mar. 29, 2012); *Payton v. Vaughn*, 798 F. Supp. 258, 261-62 (E.D. Pa. 1992). To determine whether a search was "reasonable" within the meaning of the Fourth Amendment requires "balancing the significant and legitimate security interests of the institution against the privacy interests of the inmates." *Bell*, 441 U.S. at 560.

Over ten years ago, the United States Supreme Court re-emphasized that "correctional officials must be permitted to devise reasonable search policies to detect and deter the possession of contraband in their facilities." *Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 328 (2012) (citation omitted). Where security is involved, "deference must be given to the officials in charge of the jail unless there is substantial evidence demonstrating their response to the situation is exaggerated." *Id.* at 330 (citation and internal quotation marks omitted).

The Eighth Amendment applies where a prisoner alleges that the strip search was conducted in a physically abusive manner. *See Jordan,* 428 F. App'x at 199-200 (explaining that excessive force claim arising from strip search may proceed under either Fourth or Eighth Amendments, but the latter is "the primary source of protection after an individual's conviction"); *see also Robinson*, 2012 WL 1067909, at *17 n.6 (in addition to possible Fourth Amendment violation, "Eighth Amendment may be implicated where the strip search or visual body cavity search was conducted in a brutish and unreasonable manner). Courts have found that, in certain circumstances, prisoner nudity can constitute cruel and unusual punishment under the Eighth

Amendment. *See Solan v. Ranck*, No. 06-49, 2007 WL 4111424, at *7-8 (M.D. Pa. Nov. 16, 2007), *aff'd*, 326 F. App'x 97 (3d Cir. 2009). The "basic right of privacy" is implicated when a prisoner is forced to be unclothed and, when done to humiliate the prisoner can violate the Eighth Amendment. *See id.* at *9.

At this stage, given the allegations described in *supra* Part II.A, Claim 11 shall be permitted to proceed against Officers Patterson. Officer Patterson's statement to Plaintiff during the strip search that Plaintiff liked filing lawsuits has at least an indicia that the strip search was not done to detect or deter contraband, but instead was, at least at this screening stage, unreasonable.

Nevertheless, this Court will not permit Claim 11 to proceed against Doctor Schmidt to the extent Plaintiff also seeks to bring this claim against him. "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of *respondeat superior*." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Id.* "Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Id.*; *see also Baker v. Monroe Twp.*, 50 F.3d 1186, 1190–91 (3d Cir. 1995) (a plaintiff "must show that a policymaker for the [municipality] authorized policies that led to the violations or permitted practices that were so permanent and well settled as to establish acquiescence." (citation omitted)).

Plaintiff does not allege that Doctor Schmidt was personally involved in the underlying strip search. Instead, all that is alleged is that, after the fact, Doctor Schmidt entered Plaintiff's cell and that Sergeant Mariconda stated that a pole was in the way of the inmate's view. The Court fails to see how these allegations state with any facial plausibility that Doctor Schmidt violated Plaintiff's Fourth or Eighth Amendment rights related to a strip search that had previously

occurred. Accordingly, Claim 11 is dismissed without prejudice against Doctor Schmidt for failure to state a claim upon which relief may be granted.

B. Claim 12

As noted in *supra* Part II.B in Claim 12, Plaintiff claims his right of access to counsel was violated when he was not able to visit with his attorney due to the circumstances involving arising the strip search. "Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts." *Monroe v. Beard*, 536 F.3d 198, 207 (3d Cir. 2008) (quoting *Lewis v. Casey*, 518 U.S. 343, 346 (1996)). "An inmate's right of access to the courts encompasses the right to contact visits with his or her attorney." *Lane v. Tavares*, No. 14-991, 2015 WL 435003, at *8 (M.D. Pa. Feb. 3, 2015) (quoting *Young v. Larkin*, 871 F. Supp. 772, 783 (M.D. Pa. 1994)) (other citations omitted). "Contact visitation with an attorney," however, "is merely one aspect of the broad and fundamental right of meaningful access to the courts." *Lane*, 2015 WL 435003, at *8 (quoting *Casey v. Lewis*, 4 F.3d 1516, 1523 (9th Cir.1993)). "Moreover, this right does not 'entail unfettered or totally unrestricted visitation with counsel, for it must yield to legitimate penological interests.'" *Lane*, 2015 WL 435003, at *8 (quoting *Moore v. Lehman*, 940 F. Supp. 704, 708 (M.D. Pa. 1996)). Access to courts, which encompasses the right at issue in this claim, namely contact with an attorney, requires a showing of actual injury, such as prejudice to planned or existing litigation. *See Lewis*, 418 U.S. at 348-49.

"Where prisoners assert that defendants' actions have inhibited their opportunity to [access the courts] , they must show (1) that they suffered 'an actual injury'—that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit." *Monroe*, 536 F.3d at 205 (quoting *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)).

Plaintiff fails to state a facially plausible access to courts claim in Claim 12. Indeed, he fails to show that he suffered actual injury by being unable to pursue a nonfrivolous or arguable underlying claim by being denied access to his attorney on this one occasion. Thus, Claim 12 is dismissed without prejudice for failure to state a claim upon which relief may be granted.

C. Claim 13

In Claim 13, Plaintiff alleges his due process rights were violated when Officer Patterson wrote up a disciplinary charge. Plaintiff also asserts that he never waived his right to a conference related to this disciplinary charge. Plaintiff brings this claim against Officer Patterson, who initiated the charge, and against Sergeant Mendoza, who purportedly "rubber-stamped" the disciplinary charge in collusion with Officer Patterson so that Plaintiff would be denied a conference on the charge.

The filing of false disciplinary charges "does not itself violate a prisoner's constitutional rights, so long as procedural due process protections were provided." *See Richardson v. Sherrer*, 344 F. App'x 755, 757 (3d Cir. 2009). "Due process is satisfied where an inmate is afforded an opportunity to be heard and to defend against the allegedly false misconduct reports." *Thomas v. McCoy*, 467 F. App'x 94, 97 (3d Cir. 2012).

In Claim 13 though, Plaintiff alleges he was not afforded an opportunity to be heard as Officer Patterson, in collusion with Sergeant Mendoza, prevented him from having a hearing by stating Plaintiff waived a conference. At this screening stage, Claim 13 can proceed against these two Defendants.

D. Claim 14

In Claim 14, Plaintiff alleges he suffered cruel and unusual punishment by Doctor Schmidt when Doctor Schmidt placed him in the "constant-watch" unit for one day. Plaintiff states he was freezing cold, naked and barefoot.

The Eighth Amendment requires prison officials to provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must "'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)) (other citations omitted). A prisoner asserting a condition of confinement claim must show that the alleged deprivation is "sufficiently serious" and that he has been deprived of the "minimal civilized measure of life's necessities." *Id.* at 834 (citing *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). A plaintiff must also allege that the prison official acted with deliberate indifference to the prisoner's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 298–99 (1991). Thus, "'the official must both be aware of facts from which the inference could be drawn that a substantial harm exists, and he must also draw that inference.'" *Wilson v. Burks*, 423 F. App'x 169, 173 (3d Cir. 2011) (quoting *Farmer*, 511 U.S. at 837). In analyzing whether the conditions of confinement violate the Constitution, a court examines the totality of the conditions at the institution. *See Nami v. Fauver*, 82 F.3d 63, 67 (3d Cir. 1996). "Relevant considerations include the length of confinement, the amount of time prisoners must spend in their cells each day, sanitation, lighting, bedding, ventilation, noise, education and rehabilitation programs, opportunities for activities outside the cells, and the repair and functioning of basic physical facilities such as plumbing, ventilation, and showers." *Id.* (citing *Tillery v. Owens*, 907 F.2d 418, 427 (3d Cir. 1990)); *see also Riley v. DeCarlo*, 532 F. App'x 23, 26 (3d Cir. 2013).

The Court does not find that Plaintiff's conditions of confinement allegations within this claim satisfy the *Iqbal* facial plausibility standard to state a claim against Doctor Schmidt. Indeed, Plaintiff merely lists the conditions of confinement (temperature concerns and lack of clothing), but, even assuming (without deciding) that such conditions could rise to the level of a constitutional violation, *but see Williams v. Delo*, 49 F.3d 442, 444-47 (8th Cir. 1995) (holding no Eighth Amendment violation where prisoner spent four days in a strip cell without clothes, water in cell was turned off and mattress removed, and prisoner's bedding, clothing, legal mail, and hygienic supplies were withheld); *Brannon v. White*, No. 10-1704, 2010 WL 4065109, at *2 (E.D. Mo. Oct. 15, 2010) (noting one day without clothes does not rise to the level of a constitutional violation), it is incumbent upon Plaintiff to allege with some level of facial plausibility that Doctor Schmidt was personally involved in the purported constitutional violation. That can be shown through allegations of personal direction or of actual knowledge and acquiescence as to each defendant Plaintiff wishes to sue. *See Rode*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Baker v. Monroe Twp.*, 50 F.3d 1186, 1190–91 (3d Cir. 1995); *Jackson v. Camden Cnty. Com, Facility*, No. 12–7538, 2013 WL 1844636, at *3 n.1 (D.N.J. Apr. 29, 2013). Plaintiff needs to allege personal involvement of Doctor Schmidt as it relates to the purported constitutional deprivations he alleges he suffered while in the "constant-watch" unit. His complaint fails to do so such that Claim 14 is dismissed without prejudice for failure to state a claim upon which relief may be granted.

E.   <u>Claim 15</u>

In Claim 15, Plaintiff alleges Doctor Schmidt retaliated against him for his bombardment of grievances he filed against Doctor DeFilippo and filing suit by placing him in the "constant-watch" unit. "A prisoner alleging retaliation must show: (1) constitutionally protected conduct, (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from

14

exercising his constitutional rights, and (3) a causal connection between the exercise of his constitutional rights and the adverse action taken against him." *Mack v. Yost*, 427 F. App'x 70, 72 (3d Cir. 2011) (quoting *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003)).

Plaintiff's filing suit and grievances constitute constitutionally protected conduct. *See DeFranco v. Wolfe*, 387 F. App'x 147, 157 (3d Cir. 2010). Furthermore, placement in administrative segregated housing can constitute an adverse action. *See Turzanski v. Cty. of Burlington*, No. 15-8866, 2018 WL 5874073, at *8 (D.N.J. Nov. 9, 2018) (citations omitted) ("Because confinement to administrative segregation can constitute an adverse action, the Court finds that Plaintiff could plausibly satisfy the second element of a First Amendment retaliation claim").

With respect to the third element of stating a retaliation claim with facial plausibility, to show a causal connection, a plaintiff must show that the constitutionally protected conduct was a substantial or motivating factor for the adverse action. *See Velasquez v. Diguglielmo*, 516 F. App'x 91, 95 (3d Cir. 2013) (citations omitted). Such causal connection facts usually fall into one of two categories; indeed:

> [t]o establish the requisite causal connection for a retaliation claim predicated on the First Amendment, the plaintiff (here, a prisoner) usually has to prove one of two things: (1) an unusually suggestive time proximity between the protected activity and the allegedly retaliatory action; or (2) a pattern of antagonism coupled with timing to establish a causal link. *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). If neither of these showings is made, then the plaintiff must show that, from the evidence in the record as a whole, the trier of fact should infer causation." *Id.*

*DeFranco*, 387 F. App'x at 154. While temporal proximity is relevant to retaliation, *see Ambrose v. Twp. of Robinson, Pa.*, 303 F.3d 488, 494 (3d Cir. 2002), "'[t]he mere passage of time is not legally conclusive proof against retaliation.'" *Marra v. Phila. Housing Auth.*, 497 F.3d 286, 302

15

(3d Cir. 2007) (quoting *Robinson v. Se. Pa. Tramp. Auth.*, 982 F.2d 892, 894 (3d Cir. 1993)) (other citation omitted).

The Court finds Plaintiff has adequately alleged a causal connection against Doctor Schmidt to at least proceed past screening. Plaintiff admits in his Complaint that he became "hysterical" when he was not allowed to meet with his attorney. However, the Complaint also alleges that Doctor Schmidt told Plaintiff to limit his grievances. The Court presumes based on a liberal reading of the Complaint that Doctor Schmidt's statements to limit grievances occurred prior to Plaintiff's placement in "constant watch." While Plaintiff states that Doctor Schmidt told Plaintiff to limit his complaints to only one a week, Plaintiff continued to allegedly bombard Doctor DeFilippo with grievances about his treatment (or lack thereof). At this early screening stage, this Court finds this claim should at least be permitted to proceed past screening against Doctor Schmidt. The allegations assert facts that Plaintiff's filed grievances, which are considered constitutionally protected conduct, his placement in "constant watch," which, for purposes of this Opinion, the Court will presume constitutes adverse action, and that Plaintiff has alleged a causal connection given Doctor Schmidt's statements to Plaintiff to limit his grievances, coupled with Doctor Schmidt's then placing Plaintiff under "constant watch."

F. Claim 16

In Claim 16, Plaintiff alleges that Officer Patterson and Sergeant Mendoza caused him "irreparable harm" by impeding his ability to meet with his attorney as a result of the strip search incident. Plaintiff fails to state a constitutional claim against these two Defendants for similar reasons discussed in analyzing Claim 12. Indeed, Plaintiff fails to allege any type of actual injury such as his inability to bring a claim in court arising from not being able to see his attorney on this

one occasion. Thus, it is dismissed without prejudice for failure to state a claim upon which relief may be granted.

G. Claim 18

In Claim 18, Plaintiff alleges Officer Loizos violated his right to medical privacy by eavesdropping on Plaintiff's conversation with Doctor Schmidt. The standard for asserting a medical privacy claim is as follows:

> "An individual has a constitutional right to privacy which protects 'the individual interest in avoiding disclosure of personal matters.' We have long recognized the right to privacy in one's medical information. . . ." *Doe v. Delie*, 257 F.3d 309, 315 (3d Cir. 2001) (quoting *Whalen v. Roe*, 429 U.S. 589, 599 (1977)). "[A] prisoner's right to privacy in this medical information is not fundamentally inconsistent with incarceration." *Id.* at 317.

> That being said, "a prisoner does not enjoy a right of privacy in his medical information to the same extent as a free citizen. . . . [Plaintiff's] constitutional right is subject to substantial restrictions and limitations in order for correctional officials to achieve legitimate correctional goals and maintain institutional security." *Id.* "[A]n inmate's constitutional right may be curtailed by a policy or regulation that is shown to be reasonably related to legitimate penological interests." *Id.* (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

> The Third Circuit has yet to define the parameters of a prisoner's right to privacy in his medical information. *See Smith v. Hayman*, 489 F. App'x 544, 549 (3d Cir. 2012) ("[*Delie*] did not establish any such rule with 'obvious clarity.'"). Courts construing prisoner's medical privacy claims have framed the right narrowly and have applied it to situations involving "an unusual medical condition which, if disclosed unnecessarily, would likely expose the inmate to ridicule, discrimination, or even potential violence and harm, particularly when word of the condition is likely to spread through 'humor or gossip[.]'" *Smith v. Hayman*, No. 09-2602, 2012 WL 1079634, at *18 (D.N.J. Mar. 30, 2012) (quoting *Powell v. Shriver*, 175 F.3d 107, 112–13 (2d Cir. 1999)), *aff'd, Smith*, 489 F. App'x 544 (alteration in original). Most cases concern revealing an inmate's HIV-positive status or that they are transgender. *See, e.g., Doe*, 257 F.3d 309 (HIV-positive); *Powell*, 175 F.3d 107 (transgender identity); *Smith*, 2012 WL 1079634 (transgender identity). *Cf. Vines*

> *v. Columbus House et al.*, No. 13-3923, 2017 WL 2539409, at *14 (D.N.J. June 12, 2017) (holding plaintiff did not state claim for disclosure of asthma, back problems, high blood pressure, and allergies to mold, dust, spray chemicals, and smoke).

*Ibrahim v. DeFilippo*, No. 19-5021, 2021 WL 753898, at *7 (D.N.J. Feb. 26, 2021).

The Court finds that Plaintiff has failed to state a constitutional medical privacy claim against Officer Loizos. Plaintiff does not allege what information he spoke about to Doctor Schmidt, nor that such information was in fact disclosed to Officer Loizos. He further fails to allege that any purported disclosure to Officer Loizos exposed him to ridicule, discrimination or the potential for violence and harm. Thus, he fails to state a claim. *Accord Clark v. Kalteski*, No. 22-81, 2022 WL 1172975, at *2 (E.D. Pa. Apr. 20, 2022). Claim 18 is therefore dismissed without prejudice for failure to state a claim upon which relief may be granted.

H. Claim 19

In Claim 19, Plaintiff raises a retaliation claim against Officer Pazik. He claims Officer Pazik retaliated against him by taking legal documents out of his cell. More specifically, approximately one week after Plaintiff received an affidavit that he claims he was going to use to support one of his legal actions, Officer Pazik entered his cell under false pretenses. Plaintiff states that Officer Pazik was in his cell for one hour and Plaintiff could see Officer Pazik looking through his legal papers. Plaintiff claims that Officer Pazik then came out of his cell with a wrist brace that had been given to Plaintiff from the medical department. Officer Pazik then told Plaintiff he was not allowed to have that specific type of brace and that he would be given a new one. Subsequently, Plaintiff spoke to Officer Connolly who told Plaintiff that Officer Pazik was not there for the wrist brace.

At this screening stage, this Court will permit this claim to proceed past screening.  *See, e.g.*, *Diaz v. Smith*, No. 10-1659, 2014 WL 4437469, at *6 (M.D. Pa. Sept. 9, 2014) (noting seizure of legal material can be an adverse action).

I.  Claim 20

In Claim 20, Plaintiff asserts that Officer Patterson is the "Mailroom" Sergeant.  He alleges instances where mail was not received by his intended party and instances where he did not receive incoming legal and personal mail addressed to him.  With respect to specific allegations, however, Plaintiff only names one instance where a prison employee refused to mail a copy of a letter Plaintiff had addressed to the Governor.

Prisoners need not allege or prove any "actual injury" beyond direct injury to their First Amendment right to use the mail.  *See Taylor v. Oney*, 196 F. App'x. 126, 128 (3d Cir. 2006). However, mere isolated incidents of interference without evidence of an improper motive, are insufficient to establish a First Amendment violation.  *See, e.g. Nixon v. Sec'y Pa. Dep't of Corr.*, 501 F. App'x 176, 178 (3d Cir. 2012) ("[T]he District Court correctly determined that Nixon's claim alleging a single, isolated interference with his personal mail was insufficient to constitute a first Amendment violation."); *Fuentes v. State of New Jersey Office of Pub. Defs.*, No. 05-3446, 2006 WL 83108, at *5 (D.N.J. Jan. 11, 2006) ("A single interference with the delivery of an inmate's personal mail, without more, does not rise to the level of a constitutional deprivation.").

While Plaintiff alleges that he has not received certain mailings and that certain of his mailings have not been received by his loved ones and/or legal representatives, Plaintiff's *specific allegations* regarding interference of his mail *by prison staff* amount to the one incident regarding a letter not sent to the Governor.  Aside from that allegation, Plaintiff's allegations that prison staff

are interfering with his ability to send or receive his mail are conclusory. Accordingly, this claim will be dismissed without prejudice for failure to state a claim.

J. Claim 22

In Claim 22, Plaintiff alleges that Officer Patterson, Sergeant Mendoza and Major Sears conspired to thwart Plaintiff's attempt to bring a complaint against Officer Patterson for his purported misconduct related to the strip search incident. The Court construes this claim as interference with Plaintiff's right to pursue a grievance against Officer Patterson. Plaintiff thereby claims his due process rights were violated by these Defendant Officer's actions.

Prisoners do not have a due process right to a grievance process. *See, e.g., Glenn v. DelBalso*, 599 F. App'x 457, 459 (3d Cir. 2015). Actions by prison officials that allegedly interfere with a prisoner's ability to complete a prison grievance process accordingly do not amount to violations of the prisoner's due process rights. *Id.*; *see also Holden v. Wetzel*, No. 18-237, 2021 WL 1090638, at *8 (W.D. Pa. Par. 22, 2021) (citing *Proctor v. James*, 811 F. App'x 125, 129 (3d Cir. 2020) (other citations omitted) (dismissing due process claim for purported interference with prison grievance procedure as prisoners do not have a constitutionally protected interest in administrative grievance process) Accordingly, this portion of Claim 22 against these Defendants shall not be permitted to proceed.

Within Claim 22, Plaintiff also alludes to a transfer to another unit several days after the strip search as being retaliatory. Initially, this Court notes that a transfer to another unit does not constitute an adverse action. *See, Minor v. Dilks*, No. 19-18261, 2020 WL 133278, at *9 (D.N.J. Jan. 13, 2020). Furthermore, Plaintiff fails to state with any facial plausibility Defendants that were personally responsible for this transfer. Accordingly, Plaintiff also fails to show personal involvement to sustain a retaliation claim within Claim 22. This necessitates dismissing this

portion of this claim. *See, e.g.*, *Rode*, 845 F.2d at 1207 (noting personal involvement allegations needed to sustain a civil rights claim against a defendant).

K. Claim 28

In Claim 28, Plaintiff alleges that Hearing Officer Falvey upgraded a disciplinary charge from refusing to obey an order to the more serious charge of refusing to submit to a search. Plaintiff told Hearing Officer Falvey that he viewed this as retaliatory because he was suing his subordinate, Hearing Officer Cortes. Hearing Officer Falvey ultimately sentenced Plaintiff to 150 days segregation and 30 days loss of recreation.

The Court will permit Plaintiff's retaliation claim against Hearing Officer Falvey to proceed. Plaintiff has alleged constitutionally protected conduct in the form of his suit against Hearing Officer Cortes. Furthermore, Plaintiff alleges Hearing Officer Falvey's increase of the charge was inappropriate. In certain circumstances, this *could* constitute an adverse action. *Cf. Mitchell*, 318 F.3d at 530 (allegations of a false misconduct charge which resulted in several months in disciplinary confinement would deter a reasonably firm prisoner from exercising his First Amendment rights); *Mensinger*, 293 F.3d at 653 (falsifying misconduct reports in retaliation for an inmate's resort to legal process is a violation of the First Amendment guarantee of access to the courts). The Court also takes judicial notice of a separate suit Plaintiff had filed that named Hearing Officer Cortes as a Defendant in *Ibrahim v. DeFilippo, et al.*, Civ. No. 19-5021. A summons in that case was returned as executed against Hearing Officer Cortes approximately ten days prior to Plaintiff getting initially written up for disciplinary charges. (*See* Civ. No. 19-5021, ECF 28). Thus, there is at least a possibility of a causal connection based on temporal proximity. Indeed, "[t]he Third Circuit has held that time periods of two days and ten days are sufficiently suggestive, but a time period of 'over two months' was 'not unduly suggestive' and was

insufficient to support an inference of causal connection." *Henderson v. Edens Corp.*, No. 09-1308, 2015 WL 4977189, at *9 (E.D. Pa. Aug. 20, 2015) (citing *Williams v. Philadelphia Hous. Auth. Police Dep't*, 380 F.3d 751, 760-61 (3d Cir. 2004)). Thus, this claim shall be permitted to proceed against Hearing Officer Falvey for retaliation.

Within Claim 28, Plaintiff also alludes to potential Eighth Amendment violations for being strip searched and his placement in a dry cell. Presumably, these claims are raised against Officers Balon, Williams and Zetty. Unlike the allegations raised in Claim 11, Plaintiff fails to state with any facial plausibility that the strip search in question was done in any humiliating fashion. Furthermore, with respect to his placement in a "dry-cell" and the conditions of confinement he had to endure for four days, he fails to state with any facial plausibility that any of these three Officers had any personal knowledge or involvement in the conditions Plaintiff endured during this period. Accordingly, such claims (to the extent Plaintiff seeks to pursue them) within Claim 28, are dismissed without prejudice for failure to state a claim upon which relief may be granted.

## V.    CONCLUSION

In conclusion, the following claims against the following parties shall be permitted to proceed past screening:

1. Claim 11 –as against Officers Patterson;

2. Claim 13 – as against Officer Patterson and Sergeant Mendoza;

3. Claim 15 – as against Doctor Schmidt;

4. Claim 19 – as against Officer Pazik;

5. Claim 20 – as against Officer Patterson; and

6. Claim 28 – as against Hearing Officer Falvey for retaliation.

All other remaining claims are dismissed without prejudice for failure to state a claim upon which relief may be granted.  An appropriate Order will be entered.

DATED:  November 28, 2023

_____
GEORGETTE CASTNER
United States District Judge